PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA VAILLANCOURT, | ) | |
| | ) | CASE NO.  4:24-CV-605 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| IBEX GLOBAL SOLUTIONS, INC. | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | [Resolving ECF Nos. 13, 17, 18] |
| | ) | |

Pending before the Court are Defendant IBEX Global Solutions, Inc.'s Motion to Compel Arbitration (ECF No. 13) and Motion for Relief from Initial Discovery Protocols (ECF No. 17). Also pending is Plaintiff's Motion for Leave to File, *Instanter*, Supplemental Brief in Opposition to Motion to Compel Arbitration (ECF No. 18).  Having been advised, and reviewed the record, the parties' briefs, and applicable law, the Court grants Defendant's motion to compel arbitration.  Defendant's motion for relief from Initial Discovery Protocols is denied as moot. Plaintiff's motion to file a supplemental brief is denied.

## I.        Background

### A.  Factual Background

Defendant IBEX Global Solutions, Inc. employed Plaintiff Melissa Vaillancourt as a "Customer Service Agent" or "Customer Service Representative" from August 29, 2022, until May 14, 2023.  ECF No. 1 at PageID #: 4, 6, 10.  Plaintiff alleges that she was and is a single, disabled mother who had sole caregiver responsibility for her son, who was four years old during her employment.  ECF No. 1 at PageID #: 3.  Plaintiff was born with partial paralysis from the

(4:24-CV-605)

waist down, impairing her ability to walk without crutches, causing her difficulty when walking with crutches, and leaving her unable to drive a car.  ECF No. 1 at PageID #: 3–4.

As a Customer Service Agent, Plaintiff worked from home, helping to "schedule and coordinate rides to medical facilities for customers who are not able to drive themselves."  ECF No. 1 at PageID #: 5.  Because Plaintiff had sole caregiving responsibility for her son, and because of her disability, Plaintiff's son remained at home with her while she worked.  ECF No. 1 at PageID #: 6–7.

Plaintiff alleges that, on March 20, 2023, a representative contacted Plaintiff *via* text and advised that Plaintiff was potentially qualified for an on-site Customer Service position in Pittsburgh, Pennsylvania.  ECF No. 1 at PageID #: 7–8.  Plaintiff responded by indicating that she could not accept the offer as provided because of her disability and custody of her son, prompting her need to work from home.  ECF No. 1 at PageID #: 8.  Shortly after, Plaintiff alleges that, because she shared this information, she was subjected to heightened scrutiny regarding her home working environment, including requests that she move her work desk and remove her son from the home while she worked.  *See* ECF No. 1 at PageID#: 8–10.  On May 14, 2023, Defendant terminated Plaintiff's employment.  ECF No. 1 at PageID #: 10.

On April 2, 2024, Plaintiff brought this action asserting claims of: (1) gender discrimination in violation of Title VII; (2) disability discrimination and failure to provide reasonable accommodation in violation of the Americans with Disabilities Act; (3) sex discrimination in violation of Ohio law; and (4) disability discrimination in violation of Ohio law.  ECF No. 1 at PageID #: 11–18.

**B.  The Agreement**

2

(4:24-CV-605)

Before beginning her employment, Defendant provided Plaintiff with information regarding its Direct Dialogue Program ("DDP").  ECF No. 13 at PageID #: 118.  Plaintiff was also given the opportunity to review and ask questions about the program.  On August 19, 2022, Plaintiff signed an agreement titled "Direct Dialogue Program and Mutual Agreement to Arbitrate" ("the Agreement").  ECF No. 13-1 at PageID #: 129, 134.

The Agreement details the process to resolve workplace issues, including an internal process.  ECF No. 13-1 at PageID #: 129.  After the internal process, the Agreement provides: "If for any reason you remain unsatisfied after communicating with the Chief People Officer, the next steps in the Direct Dialogue Program are Mediation, and if necessary, Arbitration, covered in the following pages."  ECF No. 13-1 at PageID #: 130.  The Agreement also provides:

> The Company and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that the Company may have against Employee or that Employee may have against the Company or its officers, directors, partners, owners, employees or agents in their capacity as such or otherwise, whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate (this "Agreement") or the breach thereof.

ECF No. 13-1 at PageID #: 131.  Relying on the Agreement, Defendant brings the instant motion to compel arbitration.

## II.    Discussion

Defendant brings the instant motion to compel arbitration (ECF No. 13) pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  Defendant argues that the case should be stayed because Plaintiff has agreed to arbitrate her claims.  ECF No. 13 at PageID #: 120.  Defendant argues that Plaintiff is not exempt from the FAA because she was not involved in interstate commerce.  ECF No. 13 at PageID #: 125.  Plaintiff responds that: (1) Defendant

(4:24-CV-605)

failed to authenticate the Agreement that she allegedly signed; (2) she is exempt from the FAA

as a worker engaged in interstate commerce; (3) the Agreement is not subject to Ohio law; and

(4) Defendant waived the right to compel arbitration by failing to first engage in mediation.  ECF

No. 14 at PageID #: 138.

### A.  Transportation Worker Exemption

Plaintiff argues that her employment with Defendant is exempt from the FAA, precluding

arbitration, because she was part of a class of employees engaged in interstate commerce.  ECF

No. 14 at PageID #: 146.  Defendant contends that Plaintiff was not a transportation worker

engaged in interstate commerce.  ECF No 15 at PageID #: 171.

9 U.S.C. § 1 provides: "nothing herein contained shall apply to contracts of employment

of seamen, railroad employees, or any other class of workers engaged in foreign or interstate

commerce."  The Court must determine whether this exemption applies before ordering

arbitration.  *New Prime Inc. v. Oliveria*, 586 U.S. 105, 111 (2019).  To determine whether the

exemption applies, the Court must first define the "class of workers" to which Plaintiff belongs,

then the Court must determine whether that class of workers is engaged in interstate commerce.

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022).

### 1.  Defining the Class of Workers

The Supreme Court has stated that defining the class of workers requires the Court to

examine the "actual work that the members of the class, as a whole, typically carry out," as

opposed to the work of the company.  *Id.* at 456.  The parties agree that Plaintiff was a Customer

Service Agent, who "receiv[ed] calls from patients throughout the country in need of

transportation to their medical appointments and locating drivers to bring those patients to and

from those appointments."  ECF No. 14 at PageID #: 149.  Therefore, the Court categorizes

4

(4:24-CV-605)

Plaintiff as a member of a class of workers whom receive calls from individuals around the country and help those individuals to receive transportation to their medical appointments.

### 2.  Interstate Commerce[1]

Plaintiff argues that she is engaged in interstate commerce because she "worked across state lines to coordinate and arrange medical transportation for patients." ECF No. 14 at PageID #: 152.  Defendant responds that Plaintiff was not directly engaged in the transportation, only logistics, of goods across state lines.  ECF No. 15 at PageID #: 171.

Both parties direct the Court to *Southwest Airlines Co. v. Saxon*.  *Saxon* does not provide a clear answer in the instant case because Plaintiff's duties are removed from the channels of interstate commerce.  *See* 596 U.S. at 457, n. 2 ("We recognize that the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders.")  This case, nonetheless, is distinct from *Saxon*.  In *Saxon*, the Supreme Court, relying on a plain reading of the statute, determined that a transportation worker is one who "play[s] a direct and necessary role in the free flow of goods across borders." *Saxon*, 596 U.S. at 458.  In other words, "transportation workers must be actively engaged in transportation of those goods across borders *via* the channels of foreign or interstate commerce." *Id.*  Therefore, the question is not whether the worker had to cross, or reach across state lines, to complete her responsibilities, but whether her work involved the transfer of goods (or people) [2] across state lines.

---

[1] Neither party contends that Plaintiff was engaged in foreign commerce, so the Court addresses only whether Plaintiff was engaged in interstate commerce.

[2] The parties disagree about whether the exemption applies to the transportation of people.  No court has determined with certainty that the exemption applies to the transportation of people.  The Third Circuit has concluded "the residual clause of § 1 is not limited to transportation workers who transport goods, but *may* also apply to those who

5

(4:24-CV-605)

While Plaintiff, like the plaintiffs in *Saxon*, did not physically cross any state lines, those plaintiffs loaded airplanes that would, eventually, cross state lines.  596 U.S. 450 (2022).  The calls to Plaintiff come from across the country, but there are no allegations that the patients calling Plaintiff crossed state lines.  Neither does Plaintiff allege that the drivers crossed state lines.  Therefore, Plaintiff is not directly involved in transporting goods (or people) across state borders.  Accordingly, under a plain reading of 9 U.S.C. § 1, Plaintiff does not fall within the exemption.

Plaintiff, instead, resembles the plaintiffs, in *Lenz v. Yellow Transp., Inc.* and *Bell v. Ryan Transportation Service, Inc.*, who worked, respectively, as a Customer Service Representative and Carrier Sales Representative.  431 F.3d 348 (8th Cir. 2005);[3]  176 F.Supp.3d 1251 (D. Kansas 2016).[4]  In his role, the plaintiff in *Lenz* "provide[d] courteous, efficient, timely and informed service to customers calling a Yellow Freight Customer Service Center."  *Lenz*, 431 F.3d at 349.  In *Bell*, the plaintiff's "duties involved locating a trucking company to transport a specific load for a shipper and negotiating the price that would be paid to the trucking company for transporting that load."  *Bell*, 176 F.Supp.3d at 1254.  The court in *Lenz* provided an eight-part test for determining if an employee is a transportation worker exempt from the FAA.  In *Lenz*, the court determined that "[plaintiff's] central task was to answer the questions of and

---

transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it."  *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 219 (3d. Cir. 2019) (emphasis added).  This case does not turn on Plaintiff's role in the transportation of passengers, but whether Plaintiff is a transportation worker engaged in interstate commerce.

[3] In fact, Plaintiff's argument is weaker than in *Lenz's* case.  The court in that case stated, "indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA."  *Id.* at 351.  In the instant case, the same cannot be said for Plaintiff; there is no indication that she would be engaged in interstate commerce if she were a driver for Defendant.

[4] The Court acknowledges that both cases are persuasive authority.

6

(4:24-CV-605)

provide information to [defendant's] customers, not to supervise packages moving in interstate

commerce."  *Lenz*, 431 F.3d at 353.  The court examined the following factors:

> (1) whether the employee works in the transportation industry; (2) whether the employee is directly responsible for transporting the goods in interstate commerce; (3) whether the employee handles goods that travel interstate; (4) whether the employee supervises employees who are themselves transportation workers, such as truck drivers; (5) whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; (6) whether the vehicle itself is vital to the commercial enterprise of the employer; (7) whether a strike by the employee would disrupt interstate commerce; and (8) the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties.

*Id*. at 352.

In the instant case, Plaintiff was not directly responsible for transporting or handling

goods (or people) in interstate commerce. *See Bell*, 176 F.Supp.3d at 1257 ("While plaintiff, like

the plaintiff in *Lenz*, helped to coordinate the flow of freight in interstate commerce, there is no

evidence that plaintiff had any responsibility for the freight itself.")  Plaintiff communicated with

but did not supervise employees who were transportation workers.  *See id.* ("While plaintiff

contends that he 'supervised drivers,' the evidence reflects that plaintiff simply communicated

by telephone with drivers and customers to obtain and relay information between drivers and

customers.")  Neither is Plaintiff within a class of employees for which special arbitration existed

when Congress enacted the FAA.  Finally, a strike by a Customer Service Representative with

Defendant would not stop individuals from finding transportation to their medical appointments.

Accordingly, under the *Lenz* test for a transportation worker exemption, Plaintiff is not a

transportation worker exempt from the FAA.

7

(4:24-CV-605)

Because Plaintiff is not a transportation worker exempt from the FAA, the FAA applies to the Agreement.

### B.  Arbitration Agreement

#### 1.  Existence, Validity, Authenticity, and Scope of the Arbitration Agreement

Plaintiff purports to challenge the authenticity and existence of the Agreement.  ECF No. 14 at PageID #: 145.  Defendant counters that Plaintiff has not brought the agreement's authenticity into question, but even if she had, that Defendant has sufficiently established the Agreement's existence and authenticity.  ECF No. 15 at PageID #: 170.

Plaintiff has not explicitly claimed that she did not see or sign the agreement.  *But see Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797 (6th Cir. 2023) (finding that plaintiff who alleged he never saw the agreement created a genuine issue as to whether he signed the agreement).  She simply argues that Defendant has failed to authenticate the Agreement.[5]  Even if the Court construes Plaintiff's argument as one that disputes her knowledge of the Agreement, Defendant has met its burden to authenticate the Agreement.

"The FAA requires district courts to compel arbitration of claims covered by a valid arbitration agreement."  *Id.* at 797–98; 9 U.S.C. § 4.  The party seeking arbitration bears the burden of proving such an agreement exists.  *Bazemore*, 74 F.4th at 798.

To authenticate evidence, Defendant must "produce evidence sufficient to support a finding that the item is what [Defendant] claims it is."  FRE 901(a).  One way to satisfy this burden is through the testimony of a witness with knowledge, who states that the "item is what it is claimed to be."  FRE 901(b)(1).  In the instant case, Defendant provided an affidavit (ECF No.

---

[5] Plaintiff's counsel indicates awareness of the arbitration agreement from pre-litigation research and relies on the Agreement in her argument regarding waiver.

8

(4:24-CV-605)

15-1) by Christina Estes, Defendant's Human Resources Director. The affiant attests to the

system, iCIMS, used by Defendant to allow employees to electronically sign agreements. ECF

No 15-1 at ¶ 4. The affiant also attests that Plaintiff signed various agreements, including the

Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate. ECF No. 15-1 at ¶ 5.

The affidavit also states that Plaintiff signed the agreement electronically at 3:05 p.m. on August

19, 2022. Accordingly, the Court finds that Defendant has properly authenticated the

Agreement.

As to the validity of the Agreement and the arbitrability of Plaintiff's claims, Plaintiff

fails to respond to Defendant's claims that the agreement is valid, and that Plaintiff's claims are

arbitrable. Defendant claims: (1) the agreement is valid pursuant under Ohio contract law, ECF

No. 13 at PageID #: 122–23; Plaintiff's claims fall within the scope of the agreement, ECF No.

13 at PageID # 123; and (3) Plaintiff's claims are generally arbitrable under federal law, ECF

No. 13 at PageID #: 124. Plaintiff's only response is that Defendant cannot compel arbitration

under state law. Because the Court finds that Plaintiff is not exempt from the FAA, Plaintiff's

argument that Defendant seeks to displace the FAA with state law is moot and misapplied.

Defendant relies on state law to establish that even state courts "enforce arbitration agreements in

the context of employment-related claims, like those asserted by Plaintiff in this case." ECF No.

13 at PageID #: 124.

Plaintiff does not challenge Defendant's assertion that "the Agreement is fair and

provides Plaintiff a forum to assert and pursue her discrimination claims. It provides for a

neutral arbitrator, adequate discovery, and the same remedies that would have been available to

Plaintiff in court. Thus, all of Plaintiff's claims are arbitrable." ECF No. 13 at PageID #: 124.

Accordingly, the Court finds that the Agreement is fair, and Plaintiff's claims are arbitrable.

9

(4:24-CV-605)

## 2. Waiver

Plaintiff argues that Defendant has "waived the right to enforce [the] arbitration position of the Agreement . . . by not first complying with the mediation portion of the Agreement." ECF No. 14 at PageID #: 155.  Defendant argues it has not waived this right because its actions have "been consistent with enforcing the terms of [the] Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate." ECF No. 15 at PageID #: 168.

The Sixth Circuit has determined that a party waives its right to arbitration when its "actions are 'completely inconsistent' with reliance on arbitration." *Schwebke v. United Wholesale Mortgage LLC*, 96 F.4th 971, 974–75 (6th Cir. 2024).  In that case, the Sixth Circuit determined that the defendant had implicitly waived its right to compel arbitration because it:

> (1) waited seven months before moving to compel arbitration; (2) did not raise arbitration as an affirmative defense; (3) raised other affirmative defenses; (4) participated in a discovery conference; (5) filed a joint discovery plan; (6) served interrogatories and requested documents; (7) noticed two depositions; and (8) agreed to an extension of the discovery deadline.

*Id.* at 975.

Defendant has vehemently objected to litigation in this case.  Defendant filed its motion to compel arbitration in response to the Complaint and filed its Answer, after the motion to compel, to comply with the undersigned's Case Management Conference Scheduling Order.  *See* ECF No. 11 at ¶¶ 1, 2.  Defendant also raised arbitration as an affirmative defense in its Answer. ECF No. 16 at PageID #: 199.  Defendant participated in a Rule 26(f) conference, but objected to the Discovery Plan, Initial Disclosures, and Initial Discovery Plan, pursuant to its argument for arbitration, and has not filed any discovery requirements. ECF No. 23 at PageID #: 240. Defendant also submitted a motion for relief from the initial discovery protocols until the

10

(4:24-CV-605)

resolution of the motion to compel arbitration.  ECF No. 17.  Accordingly, during litigation, Defendant has not acted inconsistently with reliance on arbitration.

Plaintiff argues that Defendant has waived the right to arbitration by failing to satisfy the contractual precondition of mediation.  This argument is not well-taken.  The Sixth Circuit has held that "[q]uestions regarding 'whether prerequisites such as time limits, notice, laches, estoppel, and *other conditions precedent to an obligation to arbitration* have been met,' as well as 'allegations of waiver, delay, or a like defense to arbitrability,' are questions that parties would 'likely expect' to be entrusted to an arbitrator for resolution."  *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 392 (6th Cir. 2008) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002)) (emphasis added).  Plaintiff describes the mediation clause as a "condition precedent" to arbitration, which falls squarely within this category of prerequisites to be addressed by an arbitrator.  Therefore, the Court finds that Defendant has not waived the right to arbitration.

### C.  Motion to File Supplemental Brief *Instanter*

Plaintiff moves the Court to allow leave to file a supplemental brief arguing that Defendant's reply "raises alternative arguments that were not raised in the original motion, as well as arguments that are factually incorrect and/or misleading."  ECF No. 18 at PageID #: 207.

Neither the Federal Rules of Civil Procedure nor the local civil rules permit the filing of sur-replies,[6] the Sixth Circuit has determined that "such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'"  *Key v.*

---

[6] Plaintiff refers to the brief as a supplemental brief, but it would function in the same manner as a sur-reply.

11

(4:24-CV-605)

*Shelby County*, 551 Fed. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

Plaintiff alleges that Defendant makes "alternative arguments." ECF No. 18 at PageID #: 207. This is not enough to justify the filing of a sur-reply. Additionally, Plaintiff had the opportunity to address Defendant's arguments, and did so. Plaintiff proposes three arguments in her supplemental brief. Only the third is "new," but it is still inappropriate. In her first proposed argument, Plaintiff claims that IBEX has waived its right to compel arbitration. ECF No. 18-1 at PageID #: 210. Plaintiff makes the same argument in her response, ECF No. 14 at PageID #: 153, and includes exhibits of dated emails that the Court may use to determine when Plaintiff inquired about mediation, ECF No. 14-1 at PageID #: 158. In her second, Plaintiff argues that her employment with Defendant is exempt from the FAA because she engaged in "interstate commerce." ECF No. 18-1 at PageID #: 212. Plaintiff made this argument in her response, and Defendant did not make any new arguments in response. ECF No. 14 at PageID #: 146. In her third proposed argument, Plaintiff argues that Defendant cannot compel arbitration under Ohio law. ECF No. 18-1 at PageID #: 218. The only difference between this argument and that made in Plaintiff's response, is that Plaintiff now limits her analysis to Ohio state law. *Compare* ECF No. 14 at PageID #: 152 *with* ECF No. 18-1 at PageID #: 218.

Plainly, Plaintiff attempts to use her supplemental brief to reiterate her arguments. Sur-replies are not to be allowed to reiterate arguments already expounded, but to address new arguments. Plaintiff's motion for leave to file a supplemental brief is denied.

### III. Conclusion

For the reasons above, the Court concludes that there is a valid and enforceable arbitration agreement, governed by the FAA. Accordingly, the Court grants Defendant's Motion

(4:24-CV-605)

to Compel Arbitration (ECF No. 13).  The case is stayed and administratively closed pending the

outcome of arbitration.  Counsel shall jointly notify the Court within thirty (30) days of the

conclusion of arbitration.  The Case Management Conference scheduled for July 10, 2024 is

cancelled.  Defendant's Motion for Relief from Initial Discovery Protocols (ECF No. 17) is

denied as moot.  Plaintiff's Motion to File a Supplemental Brief (ECF No. 18) is denied.


      IT IS SO ORDERED.


July 9, 2024                                  */s/ Benita Y. Pearson*

Date                                                Benita Y. Pearson

                                                           United States District Judge